FILED

2021 Sep-27  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FLOYD HUMBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:20-cv-00501-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Floyd Humber ("Humber") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Humber timely pursued and exhausted his administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED,** and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

Humber protectively filed an application for DIB on December 6, 2017, alleging disability beginning on February 10, 2017.  (Tr. 797-803).  The Commissioner initially denied Humber's claim, (tr. 737-41), and Humber requested a hearing before an ALJ, (tr. 745-46).  After a February 27, 2019 hearing, the ALJ denied Humber's claim on April 11, 2019.  (Tr. 13-28).  Humber sought

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 13).

review by the Appeals Council, but it denied his request for review on February 12, 2020.  (Tr. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  On April 14, 2020, Humber initiated this action.  (Doc. 1).

Humber was fifty years old on his alleged disability onset date.  (Tr. 24).  Humber has a twelfth-grade education and prior work as a maintenance mechanic.  (Tr. 24, 32, 37).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

This Court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law,

---

[2] In general, the legal standards applied are the same whether a claimant seeks supplemental security income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
    (4)    whether the claimant can perform his or her past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

3

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Humber had not engaged in substantial gainful activity since February 10, 2017, his alleged onset date. (Tr. 18).  At Step Two, the ALJ found Humber has the following severe impairments: lumbar disc protrusion at L5-S1, status/post remote anterior cervical discectomy and fusion (ACDF) at C5-6, hypertension, and diabetes mellitus. (*Id.*).  At Step Three, the ALJ found Humber does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to Step Four, the ALJ determined Humber's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Humber has the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c).  (Tr. 19).  At Step Four, the ALJ determined Humber could not perform his past relevant work as a maintenance mechanic. (Tr. 24). At Step Five, the ALJ determined,

based on Humber's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Humber could perform.  (Tr. 24). Therefore, the ALJ determined Humber has not been under a disability and denied his claim. (Tr. 43-44).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Humber*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Humber argues the ALJ erred in two ways: by (1) failing to consider Humber's non-exertional impairments in formulating Humber's RFC; and (2) erroneously evaluating Humber's credibility.  (Doc. 17).   Embedded in both arguments, Humber contends the ALJ erred in evaluating the medical evidence to conclude Humber could perform a full range of medium work. (*Id.* at 20-22).  The undersigned concludes that while the ALJ did not err in declining to include limitations based on two specific non-exertional impairments Humber identifies, the ALJ's conclusion that the medical evidence is consistent with a full range of medium work is not supported by substantial evidence.  Since the ALJ's reassessment of the medical evidence might lead to a different credibility determination, the undersigned does not address Humber's credibility argument.

**A. The ALJ Did Not Err by Failing to Impose Restrictions Based on Humber's Hypertension or ADHD**

Humber contends the ALJ failed to consider his non-exertional limitations of ADHD and hypertension, and thus that the ALJ erred by failing to pose a hypothetical question including those impairments to the vocational expert who testified (briefly) at his hearing.[4]   A hypothetical question including a claimant's exertional and non-exertional limitations is one of two ways an ALJ may determine a claimant's "ability to adjust to other work in the national economy." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Here, the ALJ took the other route.  The ALJ found Humber not disabled using the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, known as the "grids."  (Tr. 24-25).  "The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of 'Disabled' or 'Not Disabled.'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  By using the grids, the ALJ concluded Humber had no limitations in his ability to perform medium work.

Two of Humber's alleged non-exertional limitations find no support in the record before the ALJ.  First, the ALJ acknowledged Humber's hypertension in the RFC findings but concluded based on the record that "the evidence does not show that the claimant experiences any functional

---

[4] Humber also argues the ALJ should have imposed restrictions based on his medications' side effects.  There is some evidentiary conflict on that point, and the ALJ resolved it by discounting Humber's testimony in favor of other evidence, (*see* tr. 34-35)—in other words, by making a credibility determination.  As stated above, the undersigned declines to address this issue when a different evaluation of the medical evidence might alter the ALJ's credibility determination.

6

limitation related to these impairments." (Tr. 22). The ALJ also noted that there were records which showed Humber's hypertension was uncontrolled at times; however, those records were few. (Tr. 23). Rather than point to evidence in the record, Humber simply references two non-binding cases where courts have considered hypertension to impose limitations. (Doc. 17 at 19-20) (citing *Gray v. Massanari*, No. CA 00-00-0739-CB-C, 2001 WL 530704 (S.D. Ala. May 1, 2001) and *Evans v. Chater*, 84 F.3d 1054, 1056 (8th Cir. 1996)). However, neither of those cases support that the ALJ erred in this case, where there is no apparent record support for limitations due to hypertension, and Humber himself does not actually indicate what those limitations might be. This is insufficient to show the ALJ erred, because the mere existence of an impairment does not reveal the extent to which the impairment limits the claimant's ability to work or undermine an ALJ's determination in that regard. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

As for Humber's alleged limitations due to ADHD, his support for this comes from evidence submitted to the Appeals Council that was not before the ALJ. (Doc. 17 at 19) (citing tr. 128, 210). As the Commissioner points out, Humber did not indicate any impairments due to ADHD prior to submitting the records to the Appeals Council, including in his application or at the hearing. (Doc. 18 at 5-6) (citing tr. 31-37, 816). The ALJ had no obligation to investigate Humber's mental impairments when the record before the ALJ did not support the ADHD diagnosis and Humber did nothing to indicate they were at issue. *See Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (affirming ALJ's decision including no mental limitations in the RFC where claimant "failed to present any evidence to the ALJ that would have put him on notice of a mental or intellectual limitation on [claimant's] ability to function"); *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837 (11th Cir. 2018) (ALJ was not required to consider Asperger's disorder diagnosis when applicant did not allege it in her application for benefits or at the hearing).

**B. The ALJ's Assessment that Humber Could Perform a Full Range of Medium Work Was Not Supported by Substantial Evidence**

Humber argues the objective medical evidence was inconsistent with a full range of medium work and with the ALJ's characterization of it as "modest."  (Doc. 17 at 21; dc. 19 at 4). Humber identifies three specific pieces of evidence he says support limitations inconsistent with medium work: the opinion of orthopedic surgeon Dr. Mark Prevost, an evaluation from orthopedic surgeon Dr. Frank Spain Hodges, and a restriction imposed by treating physician Dr. Bruce Romeo.  (Doc. 17 at 20-21).  The Commissioner contends Humber failed to prove he did not have the ability to perform the full range of medium work, and thus that the ALJ properly found Humber disabled at the grids.  (Doc. 23 at 23).

Per agency regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c). According to SSR 83-10,[5]

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

---

[5] Social Security Rulings are binding on ALJs.  20 C.F.R. § 402.35(b)(1).

*Titles II & XVI: Determining Capability to Do Other Work—the Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251.

The ALJ provided a general synopsis of the evidence in this case including findings by Dr. Prevost and Dr. Hodges, concluding the medical evidence showed "generally normal examination[s], other than tenderness to palpitation over the cervical paraspinal muscles, and some reduced range of motion in the cervical spine, as well as occasional complaints of right hip flexor pain with reduced range of motion, and low back pain," later characterizing this as "repeatedly modest objective findings on examination." (Tr. 20-21).  However, even as described by the ALJ, the record does not substantiate "normal" or "modest" examinations.

Dr. Prevost first saw Humber on June 20, 2018, on Humber's reports of neck pain radiating into the left arm, with occasional numbness and tingling, and low back pain, with occasional left leg pain, numbness and tingling. (Tr. 1153-55).  On examination, Dr. Prevost found decreased range of motion in both the lumbar and cervical spine. (Tr. 1154-55).  Dr. Prevost's cervical examination showed increased pain at all extremes, with 5/5 bilateral motor strength at shoulder adductors, biceps, triceps, and interosseous, but only 4/5 motor strength for shoulder abductors and grip strength on the left. (*Id.*).  Humber's lumbar region showed 5/5 bilateral motor strength at hip extenders, plantar flexion, but only 4/5 motor strength for hip flexors on the left, knee flexors on the left, dorsiflexion on the left, and EHL on the left. (Tr. 1155).  Characterizing these as "significant radicular symptoms," Dr. Prevost ordered MRIs of Humber's lumbar spine and cervical spine. (Tr. 1155, 1158-59).  Among other abnormal findings, Dr. Prevost found a broad-based disc bulge present at L4-L5, producing "mild central canal and bilateral lateral recess stenosis in conjunction with facet arthropathy and ligamentum flavum hypertrophy." (Tr. 1158).  Dr. Prevost also observed a central disc herniation "effac[ing] the anterior aspect of the thecal sac

9

and abut[ting] the underlying cord" at C4-C5, accompanied by moderate central canal stenosis (but no foraminal stenosis).  (Tr. 1159).  Based on Humber's scans, Dr. Prevost recommended three cervical epidurals, with the potential for a C4-5 anterior cervical discectomy and fusion if the epidurals did not successfully treat Humber's pain.  (Tr. 1157).

Although Humber characterizes Dr. Prevost's statements as an opinion, under the regulations applicable to claims (like Humber's) filed after March 27, 2017, Dr. Prevost's notes are not a "medical opinion" because they are not "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ."  20 C.F.R. § 404.1513(a)(2).  Instead, they are "other medical evidence," or "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3).  An ALJ is not required to articulate his evaluation of "other medical evidence" in the same way or to the same degree as a medical opinion.  *See* 20 C.F.R. § 404.1520c.  The Commissioner rests her argument on this distinction, contending the ALJ was not bound by Dr. Prevost's statement that Humber's symptoms were "significant."  (Doc. 18 at 14-15).  However, the ALJ was not entitled to mischaracterize Dr. Prevost's abnormal objective findings as "normal" or "modest."  *See Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 354 (11th Cir. 2018) (rejecting an ALJ characterization of "minimal" objective findings when the medical evidence showed significant abnormalities).

In fact, as Humber argues, (doc. 17 at 21-22), findings similar to Dr. Prevost's are reflected throughout the record.  Further into his opinion, the ALJ provided a lengthier synopsis with more detail as to Dr. Prevost's findings, including the majority of the abnormalities listed above.  (Tr.

10

22).   Immediately afterward, the ALJ seems to have relied on follow-up notes from a different provider, Dr. Ross A. Lumsden of Southside Pain Specialists, to minimize Dr. Prevost's findings. (Tr. 22).   At two visits—October 15, 2018, and January 7, 2019—Dr. Lumsden entered identical examination findings as to Humber's cervical spine: "tenderness with palpitation, cervical paraspinals bilateral (midline) and trapezius left and appearance: muscle spasm present left, extension decreased, flexion decreased, and motion: rotation diminished; head tilt to the right unchanged, improved ROM."[6]  (Tr. 1166, 1171).   The ALJ observed that Humber had a normal gait, with no noted deficits in the lower back or lower extremities.  (Tr. 22).   The ALJ also noted Humber reported his pain as well-controlled on his medication regime.  (Tr. 22).   This is consistent with Humber's statements that his neck pain was "moderately well controlled" on October 15, 2018, (tr. 1171), and "well controlled" on January 7, 2019, (tr. 1165).[7]   However, the only portion of Dr. Lumsden's examination that arguably contradicts Dr. Prevost's findings is the indication Humber had "increased ROM."[8]   The baseline for this apparent range of motion improvement is not entirely clear, but in any event even with an "increased ROM" and well controlled pain, Dr. Lumsden still found substantially the same deficits—decreased extension, flexion, and rotation in the cervical spine—Dr. Prevost identified.  The ALJ's apparent reliance on Dr. Lumsden's records

---

[6] The ALJ identified this as "follow-up notes dated October 23, 2018," (tr. 22), but there are no treatment notes corresponding to that date.

[7] Although Humber reported his pain as well-controlled with medication, whether medication adequately controlled Humber's pain for what the ALJ noted was Humber's "sedentary lifestyle," (tr. 23), is of dubious relevance to whether it would do so while Humber performed medium work.

[8] The ALJ seems to have taken the absence of any findings of deficits in Humber's lumbar spine as evidence of the absence of those deficits, but the record does not reflect Dr. Lumsden actually performed a lumbar spine examination.

11

to diminish or discount Dr. Prevost's findings was misplaced, given they were actually consistent with Dr. Prevost's notes.[9]

The ALJ also cited a May 7, 2018 evaluation by orthopedic surgeon Dr. Frank Spain Hodges, for the proposition that Dr. Hodges "could not find a reason for the claimant's complaints of left-sided lower back pain, with discomfort radiating down the left leg, because the MRI did not show any significant evidence of central or neural foraminal narrowing to explain his lower extremity symptoms." (Tr. 22) (citing tr. 1144-52). However, Dr. Hodges did not order his own MRIs, instead relying on MRIs from January 2017 September 2017, as well as a readout of a 2010 MRI. (Tr. 1145). Dr. Hodges reported Humber was "quite resistant to cervical range of motion secondary to reproduction of pain predominately left-sided," and although he had 5/5 bilateral upper extremity strength he did "give way with manual motor testing throughout the entire upper extremity on the left side." (Tr. 1145). Dr. Hodges' ultimate conclusion was that he "could not say with a reasonable degree of medical certainty that the patient's left-sided neck pain and left upper extremity symptoms are more likely than not related to the accident at work on September 27, 2016, as much as they are to pre-existing degenerative change." (Tr. 1146). While Dr. Hodges' notes arguably can be read to undermine a physical basis that would explain some of Humber's symptoms, his objective findings are clearly in line with other medical evidence of limited cervical range of motion.

---

[9] Notably, unlike Dr. Prevost, Dr. Lumsden does not appear to have any specialty in orthopedics. Even though the two physicians' notes are "other medical evidence" not entitled to the same review as medical opinions (which considers the source's specialty, 20 C.F.R. § 404.1520c(c)(4)), it seems at least somewhat unusual to counter orthopedic findings from an orthopedist's examination with findings from an examination at a pain clinic.

Finally, and independently problematic, the ALJ omits entirely from his discussion Dr. Romeo's opinion that Humber was limited to an extent inconsistent with medium work. Specifically, Dr. Romeo examined Humber on January 27, 2017 and found left paracervical tenderness, with limited range of motion in all planes. (Tr. 901). He placed Humber on restricted duty effective January 27, 2017, with the recommendation: "no lifting over 10 lbs." (Tr. 901). Two weeks later, Dr. Romeo updated Humber's activity restrictions, indicating he had no work capacity at all. (Tr. 899). Unlike Dr. Prevost's notes, these are medical opinions within the meaning of the regulations, as they specifically relate to what work-related limitations Humber experiences. *See* 20 C.F.R. § 404.1513(a)(2). Regardless of whether the ALJ was required to defer to Dr. Romeo's opinion,[10] the regulations required him to articulate how he considered the

---

[10] Longstanding law in this circuit has required an ALJ to give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). However, the cases that support this rule predate the new regulations for claims (like this one) filed on or after March 27, 2017. Another district court has recently assessed the state of the treating physician rule:

> [W]hether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question. *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). The Eleventh Circuit has not spoken on the issue. *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104, n.4 (11th Cir. Aug. 12, 2021) ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). And district courts have diverged in their approaches. *See Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was a non-issue -- under both standards, ALJ's opinion was substantially supported); *Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh

medical opinions in the record.  20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . .").  Although the new regulations discuss "persuasiveness" rather than "weight," this is broadly consistent with controlling Eleventh Circuit law requiring an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).  Other than a brief reference to Exhibit 3F, which contains Dr. Romeo's opinion, (tr. 22), and the ALJ's boilerplate recitation that he "fully considered the medical opinions" in the record, (tr. 23), there is no indication he evaluated the persuasiveness of Dr. Romeo's opinion at all, much less through the lens of the regulatory factors listed in 20 C.F.R. § 404.1520c(c): supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of

---

Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid); *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies); *Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them).

*Simon v. Acting Comm'r of the Soc. Sec. Admin.*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *4 (M.D. Fla. Sept. 17, 2021).  Although neither party specifically addresses whether the treating physician rule applies, the Commissioner heavily implies she does not believe it does.  (*See* doc. 18 at 13-14).  The undersigned does not need to tangle with this issue because the ALJ's assessment of Dr. Romeo's opinion fails under either standard.

examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and "other factors."[11]  Nothing in the record postdating Dr. Romeo's 2017 opinion has any obvious conflict with it, nor is there any other opinion evidence of record.  There must be some opportunity for meaningful court review when uncontroverted medical opinion evidence in the record conflicts so sharply with the ALJ's RFC.[12]  *Winschel*, 631 F.3d at 1179.  That is not present here.

Although it is the ALJ's responsibility to resolve evidentiary conflicts in the record, *see Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984), the record here is free of any actual conflicts.  The one instance in the record where a physician appears to have indicated Humber had anything other than a restricted range of motion was a notation on an August 21, 2017 visit to his primary care provider that indicated no "gross impediment to active range of motion."[13]  (Tr. 921). This was a follow-up visit with no associated symptoms where Humber was checked for blood pressure, given 200mg of testosterone, and prescribed sildenafil, (tr. 918, 922), so it is unclear what Humber's primary care provider meant by this or whether Humber received any kind of examination that would have revealed anything about his range of motion.  This cryptic note could not have supplied a basis for the ALJ to find a conflict in the record as to Humber's range of

---

[11] An ALJ is not required to explain how he or she evaluated any of these factors apart from supportability and consistency, 20 C.F.R. § 404.1520c(b)(2), but the ALJ in this case did not provide any explanation at all.

[12] The ALJ also noted he "did not provide articulation about evidence that is inherently neither valuable nor persuasive," (tr. 23-24), but this clearly does not apply to the medical opinion of a treating physician that directly conflicts with the ability to perform medium work.  *See* 20 C.F.R. § 404.1520b(c) (discussing the types of information that are inherently neither valuable nor persuasive).

[13] The Commissioner highlights this and other visits to Humber's primary care provider as evidence of "normal examinations," (doc. 18 at 17), but the ALJ only described these visits as "normal" in discounting Humber's hypertension as a limitation.  (*See* tr. 23).

motion.  In any case, the ALJ did not discuss the finding at all in his opinion, which makes little sense if he relied on it to contradict the overwhelming weight of the remainder of the record.

Examinations uniformly showing decreased range of motion in the cervical and lumbar spine and tenderness to palpitation are both inconsistent with the ALJ's characterization of "generally normal" or "repeatedly modest" examinations and "materially relevant to whether [a claimant] can perform the 'considerable lifting' and 'frequent bending-stooping' usually required for the full range of medium work," *Brightmon*, 743 F. App'x at 353 (citing SSR 83-10).  *Cf. Davison v. Astrue*, 370 F. App'x 995, 997 (11th Cir. 2010) (finding claimant could engage in unrestricted medium work where he had "a full range of motion in," among other areas, his neck and back).  Even without an undiscussed, uncontroverted medical opinion directly contradicting the RFC, the ALJ's conclusion that the "generally normal" or "modest" objective evidence in the record indicated Humber could perform a full range of medium work is not supported by substantial evidence.  Accordingly, the ALJ must reevaluate this evidence on remand.  The ALJ should also make a new credibility determination in light of this reevaluation.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Humber's claim for a period of disability and disability insurance benefits is **REVERSED**, and this action is **REMANDED**.

DONE this 27th day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

16